MARTIN E. RASKIN AND MARILYN K. RASKIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Raskin v. Commissioner
Docket No. 13279-78.
United States Tax Court
T.C. Memo 1981-153; 1981 Tax Ct. Memo LEXIS 598; 41 T.C.M. (CCH) 1195; T.C.M. (RIA) 81153; March 30, 1981. *598 Held: (1) Respondent's determination that petitioners had unreported income sustained; (2) additional deductions for business expenses denied; (3) sec. 1244, I.R.C. 1954, loss disallowed; (4) claimed nonbusiness bad debt deduction denied; (5) capital loss deduction disallowed; (6) sections 6651(a) and 6653(a) additions to tax imposed; (7) petitioner Marilyn K. Raskin is not entitled to relief as an innocent spouse. Martin E. Raskin, pro se. Scott A. Taylor, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies and additions to tax in petitioners' Federal income taxes: Addition to Tax
Addition to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
1971
$ 4,556.64
$ 227.83
1972
2,764.70
$ 138.24
171.99
1973
6,027.72
301.39
379.19
1974
9,753.95
487.70
579.19 The issues for decision are: 1. Whether respondent properly determined petitioners' income for each of the years 1971, 1972, 1973, and 1974. 2. Whether petitioners have sufficiently substantiated business expense deductions claimed on their returns. 3. Whether petitioners are entitled to a $ 1,000 ordinary *599 loss deduction for 1973 on the worthlessness of section 1244 stock. 4. Whether petitioners are entitled to a bad debt deduction of $ 4,500 for 1973. 5. Whether petitioners are entitled to a $ 2,500 capital loss carryover deduction for 1973. 6. Whether petitioners are liable for additions to tax pursuant to sections 6651(a) and 6653(a). 7. Whether petitioner Marilyn K. Raskin is relieved of tax liability as an innocent spouse under section 6013(e). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Martin E. Raskin (hereinafter petitioner) and Marilyn K. Raskin, husband and wife, resided in Minneapolis, Minnesota, when they filed their joint Federal income tax returns for the years 1971, 1972, 1973, and 1974, with the Internal Revenue Service Center, Ogden, Utah, and when they filed their petition in this case. During 1971 through 1974, petitioner was a self-employed attorney engaged in the practice of law in Minnesota. Due to illness, he practiced law only part-time in 1971 and 1972. He practiced on a full-time basis in 1973 and 1974. Petitioner was also a certified public accountant and had practiced such profession for three years after *600 graduating from law school. He did not practice accounting during the years in question. As an attorney, petitioner performed various legal services and received fees for such services. On occasion, he also prepared tax returns for clients. Petitioner did not keep any books or records of his income and expenses. During the years at issue, etitioner did not maintain savings or checking accounts at any financial institution, nor did he own property in his name. All assets owned by petitioner's family were held in his wife's name alone. Marilyn K. Raskin (hereinafter Marilyn) graduated from the University of Minnesota in 1951. Following her graduation, Marilyn was employed for several years as a receptionist and employment counselor. She was not employed from 1971 through 1974 and had no source of income in those years. Since 1978 Marilyn has been the manager of a retail gift and antique shop owned by a corporation of which she and her two daughters are the sole shareholders. In her capacity as store manager, Marilyn's duties include making all purchases for the shop, making most of the sales, writing all checks, and taking inventories. During the years 1971 through 1974, *601 Marilyn maintained a personal checking account (No. 2-048-227) at the Park National Bank and was the only person authorized to draw checks on that account. She also maintained a savings account in her name at the Farmers and Mechanics Savings Bank of Minneapolis. Both petitioner and Marilyn made deposits to the checking account consisting primarily of receipts derived from petitioner's law practice. Petitioner deposited his business income in Marilyn's account for the purpose of preventing judgment creditors from levying on his earnings. Total deposits made by petitioner and Marilyn to Account No. 2-048-227 were as follows: Gross Income
Year
Deposits
Amounts [2]
1971
$ 18,661.70
$ 16,792.70
1972
21,657.18
20,672.18
1973
26,732.18
25,747.18
1974
37,644.60
36,659.60 Marilyn was aware that the amounts deposited in her checking account represented fees received by petitioner for legal services rendered. During the years involved herein, Marilyn deposited the following amounts of petitioner's business income to her checking account: Year
Deposits
1971
$ 10,653.91
1972
1,934.38
1973
1,746.00
1974
5,342.15
The amounts deposited by Marilyn were reflected *602 on bank deposit slips made out in her handwriting. In addition to making the foregoing deposits, Marilyn also wrote all checks for her family, balanced the checkbook, and reconciled the bank account. Marilyn prepared joint Federal income tax returns for herself and petitioner for each of the years 1971, 1972, and 1973. These returns were prepared on the basis of information furnished by petitioner. All computations shown on the returns, however, were made by Marilyn. Neither petitioner nor his wife prepared their 1974 return. The returns for 1972, 1973, and 1974 were signed by both petitioner and Marilyn and dated June 15, 1973, May 17, 1974, and June 30, 1975, respectively. These returns were stamped received by the Internal Revenue Service on June 21, 1973, May 23, 1974, and July 7, 1975, respectively. Attached to the 1972 return was an application for an automatic 2-month extension of time to file (Form 4868), dated April 14, 1973. Attached to the 1974 return was a Form 4868, dated April 15, 1975, and also an application for an additional extension of time to file (Form 2688), dated June 15, 1975. On Schedule C of his joint income tax returns for 1971 through 1974, petitioner *603 claimed deductions for various business expenses in connection with his law practice. The following is a summary of the business expenses claimed by petitioner on those returns and the amounts allowed by respondent in his notice of deficiency: BUSINESS EXPENSES
1971
1972
Amount Claimed
Amount
Amt. Claimed
Amount
ITEM
Per Return
Allowed
Per Return
Allowed
Depreciation
$ 143.00
$ 143.00
$ 222.69
$ 122.69
Typing
0
0
240.00
240.00
Telephone
[3] *604 595.00
0
0
0
Entertainment
260.00
260.00
100.00
100.00
Bank Charges
150.00
0
0
0
Auto Expense
2,860.00
0
1,776.00
0
Mileage
0
600.00
1,500.00
600.00
Rent
500.00
500.00
87.50
87.50
Postage
20.00
20.00
0
0
Supplies & Xerox
104.00
104.00
50.00
50.00
Dues, Book Publ.
& Misc.
60.00
60.00
0
0
Equipment Repair
0
0
0
0
$ 4,692.00
$ 1,687.00
$ 3,976.19
$ 1,200.19
1973
1974
Amt. Claimed
Amount
Amt. Claimed
Amount
ITEM
Per Return
Allowed
Per Return
Allowed
Depreciation
$ 522.69
$ 222.69
$ 522.69
$ 222.69
Typing
1,040.00
0
1,040.00
0
Telephone
787.74
0
857.00
0
Entertainment
520.00
0
520.00
0
Bank Charges
0
0
0
0
Auto Expense
3,356.42
0
4,002.57
0
Mileage
0
600.00
0
600.00
Rent
640.00
640.00
746.00
746.00
Postage
0
0
0
0
Supplies & Xerox
342.00
342.00
780.00
780.00
Dues, Book Publ.
& Misc.
185.00
185.00
185.00
185.00
Equipment Repair
109.70
109.70
0
0
$ 7,503.55
$ 2,099.39
$ 8,653.26
$ 2.533.69
In addition to the foregoing amounts allowed by respondent in the statutory notice, respondent has conceded that petitioner incurred the following deductible business expenses in 1971 and 1972: Item
1971
1972
Attorney Registration Fee
$ 25.00
Abstract
0
$ 16.50
Typing
0
10.00
Trial Transcript
152.80
0
Total
$ 177.80
$ 26.50
On his joing return for 1971, petitioner claimed an interest expense deduction of $ 2,104, all of which has been allowed by respondent. At trial, respondent conceded that petitioner is entitled to an additional interest expense deduction in 1971 of $ 175.42. On his 1973 joint return, petitioner claimed a $ 1,000 ordinary loss deduction under section 1244 for the worthlessness of stock in Senior Citizens Care Centers, Inc. (hereinafter Senior Citizens, Inc.) In his notice of deficiency, respondent disallowed the deduction because of petitioner's failure to prove his basis in the stock. Petitioner also claimed a $ 4,500 nonbusiness bad debt deduction for 1973 arising from an unpaid loan to Senior Citizens, Inc. Respondent disallowed the deduction on the ground *605 that petitioner failed to establish the existence of any such loan. In addition, petitioner claimed a $ 2,500 capital loss carryover deduction on his 1973 return. Respondent disallowed this deduction in its entirety. In his notice of deficiency, respondent determined petitioner's income for 1971 through 1974 by reference to bank deposits and checks cashed at the Park National Bank and specific checks he received from Ram Development Company, Sun Development Company and Barbara Management Company, as set forth below: 1971
1972
1973
1974
Deposits
$ 18,661.70
$ 21,657.78
$ 26,732.18
$ 37,644.60
Checks cashed
2,663.63
2,306.61
10,055.89
12,966.43
Ram Development Co.
11,399.40
173.50
Sun Development Co.
795.00
640.00
Barbara Management Co.
100.00
Total
$ 33,519.73
$ 24,877.89
$ 36,788.07
$ 50,611.03
Less: Non-income items
1,869.00
985.00
985.00
985.00
Corrected gross
receipts
31,650.73
23,892.89
35,803.07
49,626.03
Gross Receipts per
return
13,600.00
13,060.00
24,097.73
24,768.89
Increase in gross
income
$ 18,050.73
$ 10,832.89
$ 11,705.34
$ 24,857.14
At trial, respondent conceded the following reductions in petitioner's gross income as a result of mathematical errors in applying the bank deposits method: 1971
1972
1973
1974
Reductions in
gross income
$ 250.50
$ 84.46
$ 520.00
$ 4,741.65
Respondent *606 also imposed additions to tax under section 6651(a) and section 6653(a). OPINION Issue 1: Income Reconstruction
During the years 1971 through 1974, petitioner was a licensed practicing attorney in Minnesota. Although he received fees for legal services rendered, petitioner failed to keep books or record sufficient to establish the amount of his income for those years. See sec. 1.6001-1(a), Income Tax Regs. Accordingly, respondent determined petitioners' income from deposits in his wife's checking account, checks cashed through such account, and specific checks received from various corporations. Reference was made to Marilyn's checking account because petitioner maintained no bank accounts and all receipts from his law practice were deposited in her account. Petitioner does not challenge the use of the foregoing methods of income reconstruction, which are clearly proper, see sec. 446(b); Harbin v. Commissioner, 40 T.C. 373, 377 (1963), but contends that respondent erroneously included in his computation some non-income items and also certain checks that he merely endorsed for clients. Specifically, petitioner argues that various deposits in Account No. 2-048-227 represented nontaxable *607 gifts, inter-account transfers from Marilyn's savings account, and redeposits of funds previously deposited and withdrawn from such account. Petitioner has the burden of proving that respondent counted the same deposits twice and included items which were not income to him. Rule 142(a), Tax Court Rules of Practice and Procedure; see Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. by order 566 F. 2d 2 (6th Cir. 1977); Zarnow v. Commissioner, 48 T.C. 213, 216 (1967). On the record before us, we must hold for respondent. There is simply no credible evidence to support petitioner's assertion that respondent included deposits more than once in his reconstruction or counted deposits from nontaxable sources. At trial, petitioner testified that he would regularly withdraw undesignated amounts of cash from Account No. 2-048-227 and then redeposit some or all of the withdrawn funds within a few days. However, he failed to offer any documentary evidence to substantiate this so-called redeposit theory. He also admitted on cross-examination that he never examined the checking account to determine whether subsequent currency deposits were traceable to previous withdrawals. *608 Furthermore, we found petitioner's explanation for first withdrawing and later redepositing the same funds highly improbable. Petitioner stated that he engaged in such transactions because he was concerned that his wife would immediately spend the family's income if his entire earnings were initially deposited. Yet, the record shows that Marilyn was a highly educated woman and took responsibility for writing all checks, balancing the checking account and preparing tax returns. In view of these facts, we do not believe petitioner's claim that Marilyn was likely to squander their income. Moreover, there is no evidence that any of the deposits constituted mere transfers of funds from Marilyn's savings account to her checking account or that they had their source in gifts. While respondent, in his reconstruction, has reduced petitioner's corrected gross receipts by certain non-income items, petitioner failed to show any nontaxable deposits in excess of the amounts allowed. Similarly, petitioner failed to disprove that the checks he received in 1971 and 1972 from Ram Development Co., Sun Development Co., and Barbara Management Co., were not taxable to him. Although petitioner claims *609 that, at the directions of the makers of those checks, he promptly endorsed them over to several corporations who then deposited such checks in their own bank accounts, he produced no corporate records nor any testimony from the principals involved in those transactions to support his claim. Accordingly, since petitioner failed to carry his burden of proof on this issue, we must sustain respondent's determination that petitioner had unreported income in the amounts set forth in the notice of deficiency. Issue 2: Substantiation of Business Expenses
The second issue is whether petitioner is entitled to business expense deductions in excess of the amounts allowed by respondent in his notice of deficiency and conceded by him at trial. Petitioner contends that he presented sufficient evidence to support additional deductions for depreciation, telephone and typing, entertainment, and automobile expenses. We disagree. In support of his claimed depreciation deductions for 1972 through 1974, petitioner relies solely upon various schedules in his returns which list depreciation on furniture and fixtures, machines, books, and other equipment in the total amounts of $ 229.69, $ 522.69, and *610 $ 522.69, respectively. It is well settled, however, that tax returns are not proof of the statements contained therein. Halle v. Commissioner, 7 T.C. 245 (1946), affd. 175 F. 2d 500 (2d Cir. 1949). Since petitioner failed to offer any documentary evidence to substantiate his claims, he is not entitled to depreciation deductions in excess of the amounts allowed by respondent. Petitioner also claims additional deductions for telephone and typing expenses in 1971, 1973, and 1974. Respondent disallowed these deductions for lack of substantiation. With respect to 1971, petitioner maintains that stipulated bills show that he owed Northwestern Bell $ 593.62 in phone charges. Although he produced no cancelled checks or other documentary evidence as proof of payment, he asserts that it is reasonable to assume he paid such bills because otherwise he would not have received phone service in subsequent years. While this argument is theoretically persuasive, we must reject it here because petitioner failed to show that he received phone service in his name for 1972 through 1974. In fact, the record suggests that he may have obtained phone services in those years by having telephones installed *611 under friends' names. Moreover, in view of petitioner's practice of transferring his income to Marilyn's bank account in order to thwart creditors, we are simply unable to conclude that evidence of his indebtedness to Northwestern Bell demonstrates payment of the amount claimed. Petitioner also argues that he is entitled to deductions for phone expenses he incurred in 1971, 1973, and 1974 that were billed to two individuals, Mr. McGowens and J. P. Campion. Petitioner contends that the phone charges to Mr. McGowens resulted from a mistake by the phone company. He also contends that he shared an office with J. P. Campion from 1972 through 1974 and paid one-half of the phone charges on Mr. Campion's telephone. Petitioner submitted no proof, however, to support these contentions. Although he offered into evidence a document purporting to be a contemporaneous record of the phone payments he made to or on behalf of J. P. Campion, we found that crude document lacking any probative value. Finally, we note that petitioner failed to call either Mr. McGowens or Mr. Campion to corroborate his assertions. Accordingly, in view of the lack of any substantiation, we must conclude that petitioner *612 is not entitled to deductions for telephone charges in excess of the amounts allowed by respondent. Furthermore, we note that petitioner presented no documentation of any kind to support deductions for typing expenses in excess of those already allowed and conceded by respondent. Accordingly, he is not entitled to any additional deductions for such expenses. On Schedule C of his 1971 return, petitioner claimed a deduction of $ 150 for bank charges. Respondent disallowed the entire deduction for failure of substantiation. Since petitioner presented no documentation to prove that he incurred these charges and that they were even business related expenses, we must sustain respondent's determination. For each of the years 1973 and 1974, petitioner claimed an entertainment expense deduction of $ 520, which was disallowed by respondent for failure of substantiation. Section 274(d) provides, in part, that no deduction shall be allowed for entertainment expenses unless the taxpayer substantiates by adequate records or sufficient evidence corroborating his own statement the amount of such expense, the time and place of the entertainment, the business purpose of the expense, and the business *613 relationship to the taxpayer of persons entertained. Sec. 1.274-5(b)(4), Income Tax Regs. Petitioner did not provide records to substantiate the claimed expenses, nor did he produce any evidence to corroborate his own vague testimony on this issue. Since we find taht petitioner has failed to comply with the substantiation requirements of section 274(d), we must sustain respondent's disallowance of petitioner's entertainment expense deductions. On his returns for 1971 through 1974, petitioner claimed automobile expense deductions of $ 2,860, $ 1,776, $ 3,356.42, and $ 4,002.57, respectively. He also claimed a mileage expense deduction for 1972 of $ 1,500. Respondent disallowed petitioner's automobile expense deductions in their entirety, but allowed a $ 600 mileage expense deduction for each of those years. During the trial, petitioner testified that he used his automobile on a regular basis to meet clients at their offices and perform various legal services on their behalf. Other than these uncorroborated assertions, petitioner offered no evidence to establish that he used his automobile for business purposes. Indeed, since he worked only part-time in 1971 and 1972, it is obvious *614 that a portion of his total automobile expenses for such years represent nondeductible personal expenditures. Given the state of the record on this issue, we hold that respondent's determination was reasonable and should not be disturbed. Issue 3: Section 1244 Stock
Pursuant to section 1244, petitioner claimed a $ 1,000 ordinary loss deduction in 1973 for the worthlessness of stock in Senior Citizens, Inc. Respondent argues that petitioner failed to establish that he was entitled to the claimed deduction. We agree. Petitioner offered no evidence, other than his own vague and incomplete testimony, in support of this deduction. He produced no stock certificates in Senior Citizens, Inc., no corporate minutes or other evidence of a section 1244 plan, no proof of payment for the stock, nor any credible evidence establishing the worthlessness of such stock in 1973. The burden of proving the elements of a deduction under section 1244 is on petitioner, Rule 142(a), Tax Court Rules of Practice and Procedure, Welch v. Helvering, 290 U.S. 111 (1933), and he has failed to meet that burden. Accordingly, we hold for respondent on this issue. Issue 4: Bad Debt Deduction
On his 1973 return, *615 petitioner claimed a nonbusiness bad debt deduction of $ 4,500 arising from an unpaid loan made to Senior Citizens, Inc. Respondent disallowed the deduction in its entirety. Section 166(a)(1) allows a deduction for "any debt which becomes worthless within the taxable year." To qualify for a deduction under this provision, petitioner must prove that a bona fide debt existed and that some identifiable event or circumstance occurred in the taxable year which rendered the debt worthless prior to the end of such year. Sec. 1.166-1(c), Income Tax Regs.; Millsap v. Commissioner, 46 T.C. 751, 762 (1966), affd. 387 F. 2d 420 (8th Cir. 1968). Other than petitioner's unsupported testimony on this issue, the record contains no evidence showing either the existence and amount of any loan to Senior Citizens, Inc., or the worthlessness of such alleged debt in 1973. Accordingly, since petitioner has not sustained his burden of proof, we must hold for respondent. Issue 5: Capital Loss Carryover
Petitioner argues that the $ 2,500 capital loss carryover deduction claimed on his 1973 return was attributable to the cancellation of a contract for deed on an apartment building held by Crestview Investment *616 Company in which he had invested. To substantiate the loss, petitioner relies on his 1971 return which included a depreciation schedule for such company. On this record, petitioner has failed to prove that he is entitled to the claimed loss carryover deduction. The evidence offered by petitioner was simply insufficient to establish the nature of the underlying transaction which allegedly gave rise to the loss, the existence and structure of Crestview Investment Company, and the year in which such loss occurred. Although petitioner points to his 1971 return as support for his position, that return fails to disclose any capital loss which can be carried over to 1973. Accordingly, since petitioner has not carried his burden of proof on this issue, we sustain respondent's determination. Issue 6: Additions to Tax
Respondent imposed upon petitioner additions to tax under section 6651(a)[4] for delinquently filing his 1972, 1973, and 1974 returns. Petitioner contends that he is not subject to the five percent penalty because he had obtained extensions of time to file those returns and had in fact filed them before the expiration of the periods of extension. Petitioner further maintains *617 that since he timely mailed those returns prior to their respective extended due dates, it is immaterial that they were stamped "received" by the government after such dates. While we agree with petitioner that the date of receipt by government officials does not necessarily establish the date of filing, see Kralstein v. Commissioner, 38 T.C. 810, 820 (1962), we must nevertheless hold for respondent. The record shows that although applications for automatic extensions *618 were attached to petitioner's 1972 and 1974 returns, those applications were themselves untimely filed. Section 1.6081-4(a)(3), Income Tax Regs; provides, in part, that such applications must be filed on or before the date prescribed for filing the returns. In this case, those dates were April 15, 1973 and April 15, 1975, respectively. Sec. 6072(a). However, petitioner's returns for those years were not even dated until 2 to 2-1/2 months after their due dates. Accordingly, since the requests for extensions were filed with the returns and petitioner offered no proof of any earlier mailing or filing date, we conclude that such requests were invalid and that petitioner delinquently filed his returns for the years in question. Furthermore, since petitioner presented no evidence to show that his failure to timely file was due to reasonable cause, we hold that respondent's imposition of the section 6651(a) addition to tax must be sustained. Respondent also determined that petitioner is liable for additions to tax under section 6653(a) for the years 1971 through 1974. That section provides that if any part of the underpayment of tax was due to negligence or intentional disregard *619 of rules and regulations, there shall be added to the tax an amount equal to five percent of the underpayment. The petitioner has the burden of proof on this issue. Estate of Mason v. Commissioner, 64 T.C. 651, 663 (1975); Courtney v. Commissioner, 28 T.C. 658, 669 (1957). Pursuant to section 6001 and the regulations promulgated thereunder, petitioner was required to keep adequate books and records from which his tax liability could be determined. Yet, despite the fact that he was a practicing attorney and CPA with experience in tax return preparation, petitioner failed to maintain any records of his income and expenses. Moreover, he offered no explanation at trial for such failure. Considering his professional background, we are convinced that petitioner was fully aware of his recordkeeping obligation and, therefore, hold that his failure to meet that obligation was due to negligence or intentional disregard of respondent's rules and regulations. Issue 7: Innocent Spouse
The last issue for decision is whether Marilyn is relieved of tax liability as an innocent spouse under section 6013(e). As a general rule when a husband and wife file a joint return each is jointly and severally *620 liable for the tax. Sec. 6013(d)(3). Section 6013(e)[5] *621 provides, however, that an "innocent spouse" may be relieved of tax liability resulting from omissions of income attributable to the other spouse if three conditions are met: (1) the omission was in excess of 25 percent of the amount of gross income stated in the return; (2) when signing the return, the spouse claiming relief under this provision did not know of, and had no reason to know of the omission; and (3) taking into account all facts and circumstances, including whether or not the "innocent spouse" significantly benefited from the omitted income, it would be inequitable to hold that spouse liable for the deficiencies in tax resulting from such omission. Fox v. Commissioner, 61 T.C. 704, 716 (1974). Marilyn bears the burden of proving that each of the conditions has been satisfied. Adams v. Commissioner, 60 T.C. 300, 303 (1973); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971). For the reasons set forth below, we find that Marilyn has not satisfied the requirements of section 6013(e)(1)(B) and is, therefore, not entitled to relief as an innocent spouse. To satisfy section 6013(e)(1)(B), Marilyn must show that she lacked both actual knowledge of the omitted *622 income and that a reasonably prudent person under her circumstances would have no reason to know of the omissions. See Sanders v. United States, 509 F. 2d 162, 166-167 (5th Cir. 1975); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). As previously indicated, Marilyn was a highly educated woman and took a major role in handling her family's finances. See Quinn v. Commissioner, 62 T.C. 223, 230-231 (1974), affd. 524 F. 2d 617 (7th Cir. 1975). She wrote all checks, balanced the checking account, reconciled bank statements, made out numerous deposit slips composed of petitioner's business receipts, and prepared her and her husband's joint returns for three of the four years in question. Moreover, since petitioner deposited all his business income, including the omitted funds, in Marilyn's bank account, it is clear that, at the very least, she had reason to know of both the existence and amount of such omissions. Accordingly, we hold that Marilyn does not qualify for the relief provisions of section 6013(e). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. A portion of the amounts deposited represented non-income items.↩
3. Petitioner owed Northwestern Bell $593.62 for phone charges incurred in conection with his activities as a licensed practicing attorney.
4. SEC. 6651. FAILURE TO FILE TAX RETURN OR TO RAY TAX. (a) Addition to the Tax.--In the case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is not for more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate.↩
5. Sec. 6013(e) provides in pertinent part: (e) Spouse Relieved of Liability in Certain Cases.-- (1) In General.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, Then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income.↩