IRA J. HAMMOND and VICKIE HAMMOND, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hammond v. Commissioner
Docket No. 10975-87
United States Tax Court
T.C. Memo 1990-22; 1990 Tax Ct. Memo LEXIS 22; 58 T.C.M. (CCH) 1196; T.C.M. (RIA) 90022; January 11, 1990
Edward R. Joyce, for the petitioners. Donald L. Wells, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, *23 Judge: In a notice of deficiency dated January 30, 1987, respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6653(b)(2)
Sec. 6661 [1]
1979
$ 176,443
$ 88,222
1980
173,211
86,606
1981
157,044
78,522
1982
124,412
62,206 *
$ 31,103
The parties have agreed to the amounts of all deficiencies and additions to tax. Their agreements are set forth in the Stipulation of Agreed Adjustments and Supplemental Stipulation of Agreed Adjustments which were filed on October 11, 1988 and October 12, 1988, respectively. The only issue remaining is whether petitioner Vickie Hammond qualifies for innocent spouse relief pursuant to the provisions of section 6013(e). FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. *24 Petitioners Ira J. Hammond and Vickie Hammond are husband and wife who resided in Moberly, Missouri, when they filed their petition in this case. Petitioners timely filed their joint Federal income tax returns with the Internal Revenue Service for the calendar years 1979, 1980, 1981, and 1982. On these returns they reported adjusted gross income and total tax due, as follows: Adjusted Gross
Total Tax
Year
Income
Due
1979
$ 17,661
$ 3,208
1980
22,696
4,745
1981
24,792
5,331
1982
15,937
2,410
Ira J. Hammond is an osteopathic physician who reported the following gross profits from his business during the years in issue: Year
Gross Profits
1979
$ 49,337
1980
51,059
1981
49,207
1982
51,132
During the years in issue Dr. Hammond received the following additional income from the sale of narcotics which was not reported on his joint Federal income tax returns: Income from Sale
Year
of Narcotics
1979
$ 366,600
1980
358,000
1981
323,800
1982
265,000
Vickie Hammond (hereinafter referred to individually as petitioner) was married to Kenneth Kellog in *25 1957. They had three children -- Jeffrey, Suzanne and Kendra. In 1966 petitioner was divorced from Kenneth Kellog. At that time she sold her house in the St. Louis, Missouri, area and moved with her three children to Moberly, Missouri. She purchased a house on South Fourth Street in Moberly where she and her children lived until her marriage to Ira J. Hammond in 1968. Petitioner was employed during the time she lived in the house on South Fourth Street. When petitioner married Dr. Hammond she sold her house on South Fourth Street and moved with her two daughters into Dr. Hammond's house on Reid Street in Moberly. Dr. Hammond had two adopted children, John and Renee, who lived with petitioners during the years 1979 through 1982. In 1971 petitioners built a new house on South Highway 63 in Moberly. It was a large Southern style home with white columns. It was commonly referred to as Tara. It was distinctive in comparison to other houses in the area. The interior of Tara featured large rooms with high ceilings. It was furnished with several antiques. From 1979 through 1982 petitioners made substantial purchases of furnishings for their home from Rust & Martin and Decors *26 Unlimited. Petitioner often shopped with her husband at Rust & Martin and signed invoices which reflected prices of purchased items when they were delivered to their home. Petitioner shopped with her husband at Stix, Baer & Fuller, Famous-Barr, and Boyds, which are St. Louis area department stores. She also shopped for clothing and other things for her daughters when they needed them. Petitioner did not directly pay for her shopping purchases in St. Louis and Moberly, but she was authorized to sign for purchases and was aware of the costs of the items. Petitioner knew that her husband owned and maintained harness racing horses in Kentucky and made frequent trips there. She also knew that her husband engaged in farming activities on land located around Moberly. Petitioner was the owner of a registered quarter horse named Tenders Ruby Lady which was acquired in 1981 for $ 2,800. Kendra Kellog and Renee Hammond, who participated in an equestrian program, had quarter horses which were stabled at Tara, the home property. During the years in issue Kendra Kellog and Renee Hammond attended William Woods College, a private school. In 1979, petitioner's stepson, John Hammond, attended *27 Mexico Military Academy, a private school. In 1979 petitioners acquired a parcel of real estate for $ 35,000. The amount of $ 15,000 of the purchase price was obtained by petitioner through a loan or a gift from her stepfather, Bennie Walters. The record does not show the source of the remaining $ 20,000. However, petitioner was directly involved in the transaction. Also in 1979 petitioners purchased a new Lincoln automobile for $ 16,247; home furnishings from Rust & Martin that cost $ 13,669.24; and department store purchases of $ 4,104.30. They spent at least $ 3,510 in 1979 on their personal residence and paid $ 6,715.82 to private schools for their children -- $ 6,440.82 to Mexico Military Academy and $ 275 to William Woods College. In 1980 petitioners had major expenditures in the same categories. They purchased a Cadillac automobile for $ 16,052 and a Chevrolet pick-up truck for $ 9,643.06. They spent $ 10,754 at Rust & Martin; $ 3,726.40 at department stores; and $ 13,073 on their personal residence. They also paid $ 1,501.87 to William Woods College. In 1981 petitioners had major expenditures in the same categories. They purchased a Ford pick-up truck for $ 11,489.89. *28 They made a down payment of $ 6,700 on a Cadillac automobile. They spent $ 7,139 at Rust & Martin; $ 3,405.31 for department store purchases; and $ 7,282.20 on the personal residence. They paid $ 10,017.67 to William Woods College. In addition, they paid $ 4,050.45 in construction costs on a house for Suzanne, petitioner's daughter, and her husband, Gary White. In 1982 petitioners had major expenditures in the same categories. They paid the balance of $ 19,303 on the purchase price for the 1982 Cadillac. They spent $ 4,852.96 on home furnishings purchased from Decors Unlimited; $ 6,365.84 on department store purchases; and $ 24,090.02 on their personal residence. They paid $ 16,914.50 to William Woods College. Petitioner was aware of her husband's farming activities and that money was spent on purchases of farm equipment, such as two tractors purchased in 1980 for $ 7,000 and $ 3,418.75 and a mower and cutter which were bought in 1981 for $ 5,700 and $ 800, respectively. The minimum amounts of expenditures (not including any amounts spent for day-to-day living expenses for groceries, utilities, automobile expenses and the like) which petitioner knew about or was aware of, *29 were as follows: Total Known
Year
Expenditures
1979
$ 44,246.36
1980
65,169.08
1981
59,384.52
1982
71,526.32
OPINION Section 6013(a) allows a husband and wife to file a joint return even though one of them has no gross income and claims no deductions. In such case the liability of each spouse is joint and several. Sec. 6013(d)(3). However, an "innocent" spouse may be relieved of liability for certain items attributable to the other spouse if the following four requirements of section 6013(e)(1) are met: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement * * *. Petitioner contends that she has met all four requirements of the statute. *30 The burden is on petitioner to prove that she is entitled to innocent spouse relief under section 6013(e). ; . The parties agree that joint Federal income tax returns were filed for each of the years 1979 through 1982. It is undisputed that the deficiencies for such years result from substantial understatements attributable to grossly erroneous items of Ira J. Hammond. The omitted gross income attributable to Dr. Hammond on each of the joint Federal income tax returns for 1979, 1980, 1981, and 1982 was $ 366,600, $ 358,000, $ 323,800, and $ 265,000, respectively. In this regard the determinations made in the notice of deficiency are unchallenged. Petitioner contends, and respondent disputes, that she meets the requirements of section 6013(e)(1)(C) and (D). She argues that she did not know, and had no reason to know, of the substantial understatements of tax attributable to the grossly erroneous items of her husband, and that it would be inequitable to hold her liable for the tax deficiencies. In our opinion petitioner has failed to carry *31 her burden of proof with respect to both requirements. The result urged by petitioner simply does not square with the evidence in this record. Petitioner testified that she signed the joint returns for the years in question without reviewing them and without paying "any attention to figures." She also testified that she did not "check out" the returns with her husband. This self-serving testimony is the only proof offered by petitioner that she did not know about the substantial understatements on the returns. The record is silent as to what knowledge petitioner may have had about Dr. Hammond's income-producing activities which led to the unreported income. We have previously held that where a taxpayer has made no attempts to ascertain the correct amount of family income and there was no testimony that books and records were not available to the taxpayer-spouse, her actual lack of knowledge would not be sufficient to bring her within the purview of section 6013(e). . It is not enough that a wife did not know that her joint income tax return reflected a substantial understatement of tax attributable to grossly erroneous *32 items of her spouse, but further that there was no reason to know. It is a two-pronged requirement. See . The standard to be applied in determining whether an individual had reason to know is a reasonable-person standard. . In other words, would a reasonably prudent person in the same position as a taxpayer claiming innocent spouse status infer that the joint return omitted gross income? A key factor in deciding whether a spouse should have known of substantial understatements of tax is the extent that family expenditures, about which the spouse had knowledge or awareness, exceed reported income. . A reasonably prudent person would be put on notice where the amounts of reported income on tax returns could not reasonably support the family in their accustomed lifestyle. . Here there are significant disparities between petitioners' expenditures and the income they reported on their tax returns for *33 the years in question. These are fully set forth in our findings of fact and need not be repeated. In each year petitioners' expenditures were two or three times their reported income. In these circumstances petitioner should have known that she and other members of her family were spending far more money than was available to them from reported income. . We have considered , the only case cited by petitioner in support of her position. In our judgment the facts of the Botsaris case are clearly distinguishable from those present here. The facts of this case more closely resemble those in Accordingly, we conclude that in view of petitioner's awareness and knowledge of the family's expenditures and financial transactions she would have had reason to know of the substantial amounts of income omitted from the joint returns. Next petitioner contends that, taking into account all the facts and circumstances, it would be inequitable to hold her liable for the deficiencies in tax attributable to the *34 substantial understatements. To the contrary, respondent contends that it would not be inequitable to hold petitioner liable for the deficiencies. We agree with respondent. In 1984 substantial revisions were made to the innocent spouse provisions of the Code by the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494. Prior to the revisions, the innocent spouse provision, now codified as section 6013(e)(1)(D), required a determination as to whether or not the spouse claiming innocent spouse status significantly benefited, directly or indirectly, from the items omitted from gross income. Notwithstanding the absence of that provision in the present statute, we have held that it would not be inequitable to hold the other spouse liable for the deficiencies in tax if substantial benefits from the omissions in income were received. , affd. . Here it is clear that petitioner significantly benefited, both directly and indirectly, from the income omitted from the joint Federal income tax returns. Petitioners lived in a luxurious house, drove luxury automobiles, kept harness racing *35 horses in Kentucky, owned registered quarter horses, sent their children to expensive private schools, made regular and substantial purchases of home furnishings, and lived in a manner far beyond what could have been supported by the income they reported on their joint returns for the years 1979 through 1982. Estate of Krock v. Commissioner, 93 T.C. (Dec. 11, 1989); ; and . We, therefore, conclude that it would not be inequitable to hold petitioner liable for the tax deficiencies for the years in issue. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue. * 50 percent of the interest due on $ 124,412.↩