**Sandra WORTHINGTON, Plaintiff & Counterclaim Defendant,**

v.

**UNITED STATES of America, Defendant & Counter-claimant.**

**Addie B. Worthington, Additional defendant on counterclaim.**

**No. 93–116–CIV–4–F.**

United States District Court,
E.D. North Carolina,
New Bern Division.

Sept. 21, 1994.

Trawick H. Stubbs, Jr., New Bern, NC, James M. Ayers, II, New Bern, NC, for plaintiff.

R.A. Renfer, Jr., Asst. U.S. Atty., Office of U.S. Atty., Raleigh, NC, Thomas Holderness, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## *ORDER*

JAMES C. FOX, Chief Judge.

This matter is before the court on cross-motions for summary judgment filed by plaintiff and counterclaim defendant, Sandra Worthington (Sandra) and additional defendant on counterclaim, Addie B. Worthington (Addie); and by defendant and counter-claimant, the United States of America (the Government). The motions have been thoroughly briefed and are ripe for disposition.

### STATEMENT OF THE CASE

Sandra instituted this action by complaint filed on August 27, 1993, seeking a judgment ordering the release of certain real property located in Greene County, North Carolina (the Greene County property). She alleged that the Internal Revenue Service (IRS) wrongfully levied on and seized the real property which had been in her family for several generations, and had been transferred to her from her mother, Addie, in March of 1988.

The Government filed its answer and counterclaim on October 7, 1993, alleging that Addie's transfer of the property to Sandra was a fraudulent conveyance, and requested that the court enter an order validating the federal tax liens and finding that the liens attached to all of Addie's real property, including the Greene County property.

On November 29, 1993, Sandra, in reply, alleged that the Government was barred by the applicable statute of limitations from asserting that the transfer of the Greene County property in March of 1988, was a fraudulent transfer. Sandra further alleged that Addie meets the requirements of the "Inno-

cent Spouse Doctrine," and hence, Addie should be relieved from tax liability attributable to her husband's omission of gross income from their jointly-filed income tax returns.

## STATEMENT OF THE FACTS

Although the details of his conduct are not of record, it appears that Addie's husband (and, presumably Sandra's father), John T. Worthington, failed to pay the full income tax the IRS believed he owed for the years 1983, 1984, 1985, 1987, 1989, 1990 and 1991. The IRS appears to have disallowed certain deductions claimed on tax returns for those years, which returns were jointly filed by John and Addie, having been prepared by John and his accountant, John Whitfield. Addie contends that she had no involvement in John's business, that she had no hand in preparation of the returns, and that she had no contact or dealings with the IRS other than signing her name on the returns after they were prepared. John apparently was convicted of a federal offense, and Addie contends most of the family income was used to pay legal bills incurred in defending John and their son, Tommy, against the federal charges.

John died on April 22, 1992, and the Government now seeks to recover from Addie's assets the sum of $351,525.55, which it contends represents the unpaid taxes, interest accrued and penalties for the tax years listed above. The Government's position in this litigation is that Addie, in an attempt to prevent the IRS from reaching it, transferred the Greene County property to Sandra for no consideration and that the transfer, therefore, was fraudulent and must be set aside. The Government contends its position is bolstered by the fact that, at the time of the transfer, Addie's assets totalled only $71,000.00 and a 1987 Buick.

## STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153–61, 90 S.Ct. 1598, 1606–10, 26 L.Ed.2d 142 (1970). The Supreme Court has instructed that:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). Further, a party opposing a motion for summary judgment will have to "do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (citation omitted).

Accordingly, summary judgment should be entered "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Tuck v. Henkel*, 973 F.2d 371, 374 (4th Cir.1992). "[O]nce a motion is made and supported, the nonmoving party must produce evidence showing a genuine issue for trial." *RGI, Inc. v. Unified Industries, Inc.*, 963 F.2d 658, 661 (4th Cir. 1992).

In support of its motion for summary judgment, the Government has filed Addie's Answers to Interrogatories and portions of her deposition, a copy of an IRS Certificate of Assessments and Payments, and the Declaration of the trial attorney who is prosecuting this action for the Tax Division of the U.S. Department of Justice. Although Addie has not supplemented the record with additional documents, those filed by the Government fully support her position.

## ANALYSIS

There appears to be no dispute but that the IRS' assessments are correct. Addie's only legal challenge to liability is her assertion that she is qualified for relief as an "innocent spouse." [1] Section 6013(d)(3) of the Internal Revenue Code of 1954 and 1986 [2] provides that when a joint return is filed, the parties are jointly and severally liable for the amount of tax due. An exception to joint and several liability is the "innocent spouse" rule, set forth in § 6013(e), which provides:

**(e) Spouse Relieved of Liability in Certain Cases.**

(1) In general—Under regulations prescribed by the Secretary, if—

(A) a joint return has been made under this section for a taxable year,

(B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse,

(C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and

(D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.

The purpose of § 6013(e) is to protect one spouse from the dishonesty or overreaching of the other spouse. *Purcell v. Commissioner of Internal Revenue*, 826 F.2d 470, 475 (6th Cir.1987). The "innocent spouse" rule was enacted by Congress to remedy situations where the imposition of joint liability would create a "grave injustice." S.Rep. No. 91–1537, 91st Congress, 2d Sess. at 6090.

Of the four elements constituting the requirements for the "innocent spouse" exception, only the latter two—knowledge or reason to know and equity—are in dispute here. It has been said that " '[a] spouse has "reason to know" of the substantial understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the substantial understatement.' " *Pietromonaco v. Commissioner of Internal Revenue*, 3 F.3d 1342, 1345 (9th Cir.1993) (quoting *Price v. Commissioner*, 887 F.2d 959, 965 (9th Cir.1989)). The standard is an objective one. *Pietromonaco*, 3 F.3d at 1345.

Several factors have been identified to assist the court in ascertaining whether a spouse "had reason to know." The Eleventh Circuit Court of Appeals compiled a list of such factors in 1989:

[T]he alleged innocent spouse's level of education, *Probinsky v. Commissioner*, 55 T.C.M. (CCH) 1546 [1988 WL 83541] (1988); *Raskin v. Commissioner*, 41 T.C.M. (CCH) 1195 [1981 WL 10474] (1981), and involvement in the family's business and financial affairs, *Probinsky*, 55 T.C.M. (CCH) 1546; *Guth v. Commissioner*, T.C.Memo. 1987–522 [1987 WL 48809], *appeal filed* (9th Cir., Jan. 11, 1988); *cf. Coleman v. Commissioner*, 56 T.C.M. (CCH) 710 [1988 WL 123875] (1988); the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns,

---

**1.** Although she has raised the defense, Addie has not pursued her assertion that the Government's claim is barred by the statute of limitations.

**2.** The years at issue span both the 1954 and the 1986 Codes. Fortunately, the relevant statutory provisions did not change.

*Sanders [v. United States],* 509 F.2d [162] at 167 [(5th Cir.1975)]; *Coleman,* 56 T.C.M. (CCH) 710; *Mysse v. Commissioner,* 57 T.C. 680, 698 [1972 WL 2536] (1972); and the culpable spouse's evasiveness and deceit concerning the couple's finances, *Sanders,* 509 F.2d at 167; *Probinsky,* [55] T.C.M. (CCH) 1546; *Guth,* T.C.Memo. 1987–522. The alleged innocent spouse's role as homemaker and complete deference to the husband's judgment concerning the couple's finances, however, standing alone are insufficient to establish that a spouse had no "reason to know."

*Stevens v. Commissioner of Internal Revenue,* 872 F.2d 1499, 1505–06 (11th Cir.1989); *see also Pietromonaco,* 3 F.3d at 1345 (the "Tax Court has said that, '[a] key factor in deciding whether a spouse should have known of substantial understatements of tax is the *extent* that family expenses, about which the spouse had knowledge or awareness, *exceed reported income.*' *Hammond v. Commissioner,* 58 T.C.M. (CCH) 1196, 1199, 1990 WL 1107 (1990) (emphasis added)." (Citation omitted)).

The Government, citing a passage from Addie's deposition, contends that John did not use the marital tax savings solely for himself. In response to the Government's question, "Didn't you benefit from having more money in your joint checking account, back in those years?," Addie replied,

> No, I didn't. We might have had a thousand or fifteen hundred dollars in the checking account. The only thing I ever had with the joint checking account was to pay bills.... It didn't give me any more. I didn't do any more things, or have any more than I'd been having. So, no, I could not tell any difference.

The Government persisted, however, and asked, "But did your husband have any more or get any more, or have any new things," to which Addie responded, "I don't know. Nothing that I could see, because if we had more this year, we might have lost money next year on farming or the warehouse, so it's not a steady thing. So, you don't look at it that way." Deposition at 50. In support of its contention that Addie "was aware of most of the transactions which resulted in the audit deficiencies," the Government cites its own declaration concerning disallowance of deductions for John's automobile, payment of their son's loans and payments for legal fees, as well as unreported gains from sales of real property, the subject of which is not disclosed in the declaration.

It is well-settled that the individual claiming relief under § 6013(e) has the burden of proving by a preponderance of the evidence each element of innocent spouse status. *Clevenger v. Commissioner of Internal Revenue,* 826 F.2d 1379, 1382 (4th Cir. 1987). Addie has stated under oath during her deposition and in answer to the Government's interrogatories that she did not know of her husband's acts and omissions, and has responded to the Government's inquiries with statements tending to prove that she did not "have reason to know." In the face of such competent evidence, the Government must come forward with more than bald allegations such as "Addie Worthington was aware of most of the transactions which resulted in the audit deficiencies," and "Addie Worthington knew of the transactions which created the substantial understatements of tax." In its reply to Sandra's and Addie's motion for summary judgment, the Government rests its case with the following:

> The Worthingtons state "[t]he United States has not shown one benefit which Addie Worthington received from her husband's omission of income from their tax returns." (Worthington Memorandum at 7.) It is true that there is no evidence of new furs, jewelry, or cars for Addie Worthington from the tax savings. It is equally true that there is no such evidence of assets for J.T. Worthington either. Benefits do not have to be luxurious to exist. It is unclear whether the money that was not paid as taxes went for groceries, mortgage payments, or utilities. *However, it is known that the Worthingtons lived "everyday, normal lives" and the tax savings were spent somewhere. Since there is no evidence that J.T. Worthington secretly spent the money on himself, Addie Worthington benefitted from the possession and use of the unpaid tax dollars by her household.* (A. Worthington deposition at 49–50).

Government's Reply at 2 (emphasis added). The Government's thinly veiled contention that Addie must prove what happened to the money is ludicrous. Addie plainly and repeatedly answered under oath that she did not know. The logic of the Government's suggestion—that because the Worthingtons lived everyday normal lives, Addie should have known her husband was cheating on his taxes—evades the court, which is unwilling to accept the Government's "Catch 22" theory that Addie is not an innocent spouse because she cannot account for the money.[3] An innocent spouse from whom the means and proceeds of tax evasion have been hidden is in no position to explain to the Government where the money went.

Undaunted, the Government goes on to contend that it is not inequitable to hold Addie responsible for the tax liability because she received all of John's assets upon his death. Remarkably, the Government makes this assertion while acknowledging that John did not squirrel away the money for Addie to inherit; he had no assets upon his death. According to Addie, the only legacy John left (besides this tax liability) was the family home and his old clothes. Addie's sole means of support for herself and her two grandchildren who live with her is her monthly Social Security check in the amount of $955.00.

Considering all the evidence of record and the contentions of the parties, the court concludes that Addie has carried her burden of demonstrating that she did not know or have reason to know that the tax returns she signed contained a substantial understatement of tax attributable to grossly erroneous items of her husband. The Government's

bald contentions to the contrary simply are insufficient to carry the day, its "supporting documentation" in fact bolstering Addie's position. Moreover, even if a spouse is unsuccessful in establishing she had no reason to know, the law requires the court to consider "all the facts and circumstances" in determining whether or not it is equitable to hold her liable for the tax deficiency. All the facts and circumstances presented to the court firmly support the fairness of Addie's exemption as an "innocent spouse."

Having so concluded, the court need not go on to discuss the Government's allegation that Addie's transfer of the Greene County was fraudulent because she received no consideration therefor. Suffice it to say that, notwithstanding what appears to be satisfaction of the technical requirements of a "fraudulent transfer," the Government is not entitled to have the transfer set aside, because, as an "innocent spouse," Addie is not liable for the tax deficiency and, consequently, not a "debtor" for purposes of the law of fraudulent transfers.[4]

## CONCLUSION

For the foregoing reasons, therefore, the court concludes that there is no genuine issue of material fact and that Sandra Worthington is entitled to judgment as a matter of law. The Clerk of Court is DIRECTED to enter judgment in favor of the plaintiff and counterclaim defendant, Sandra Worthington, ordering the release of the levy and seizure of the property described in her complaint, and ordering the United States to return the property to her. For the same reasons, the Government's motion for summary judgment is DENIED. If plaintiff intends to pursue

3. Mindful that one of the relevant factors in establishing "innocent spouse" status is the (other) "culpable spouse's evasiveness and deceit concerning the couple's finances," *Stevens*, 872 F.2d at 1505, and accepting that a bona fide innocent spouse truly would not be able to explain "what happened to the money," the court deems Addie's sworn testimony disavowing involvement in or knowledge of a tax evasion scheme, or benefit from the proceeds thereof, necessarily is sufficient to satisfy her burden of proof of establishing a prima facie case. How else could Addie prove such a negative? The Government was free to proffer any competent evidence to the contrary to rebut Addie's prima

facie case, but it has not done so. Accepting the parties' contentions that no genuine issue of material fact exists for trial, therefore, summary judgment is appropriate in favor of Sandra and Addie.

4. A transfer is fraudulent as to a debt to the United States which arises before the transfer if (1) the debtor did not receive a reasonably equivalent value in exchange for the transfer, and (2) the debtor is insolvent at the time of the transfer or becomes insolvent as a result of the transfer. 26 U.S.C. § 3304(a)(1).

her prayer for an award of attorney's fees and costs pursuant to § 7430 of the Internal Revenue Code, she shall file a memorandum and appropriate affidavits within fifteen (15) days of her receipt of this order. The Government will have fifteen (15) days thereafter to respond.

SO ORDERED.