ESTATE OF DAVID PROBINSKY, DECEASED, BRENT PROBINSKY, PERSONAL REPRESENTATIVE, AND MARCI PROBINSKY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Probinsky v. Commissioner
Docket No. 844-85.
United States Tax Court
T.C. Memo 1988-371; 1988 Tax Ct. Memo LEXIS 399; 55 T.C.M. (CCH) 1546; T.C.M. (RIA) 88371; August 15, 1988. David A. Gradwohl, for the petitioner Marci Probinsky. Richard A. Josepher, for the petitioner Estate of David Probinsky. David A. Breen, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency in petitioners' *400 Federal income tax for the taxable year 1980 in the amount of $ 36,502. The issue we must decide is whether petitioner Marci Probinsky qualifies for relief from joint and several liability, pursuant to section 6013(e), [1] for the deficiency determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The parties have agreed that venue on appeal will lie to the United States Court of Appeals for the Third Circuit. David and Marci Probinsky were married on December 13, 1980. They were divorced in 1984 and David Probinsky ("Probinsky") died on June 6, 1985. Marci Probinsky has remarried and is now known as Marci Geisel. Petitioners have not moved to change the caption on the petition, but we will hereinafter refer to petitioner Marci Probinsky as Mrs. Geisel. At the time of their marriage, Probinsky was 61 years old and Mrs. Geisel was 23. Mrs. Geisel is a high school graduate with no training in bookkeeping, business or financial matters. Probinsky and Mrs. Geisel met in January 1979 at the Resorts International Casino Hotel ("Resorts *401 International") in Atlantic City, New Jersey. Mrs. Geisel worked as a photographer at Resorts International from 1978 until she was injured in a serious motorcycle accident in July 1979. After the accident and through 1980, she was unemployed and received disability benefits. Probinsky was a self-employed public relations consultant. In early 1979, he testified on behalf of Resorts International at a licensing proceeding before the New Jersey Casino Control Commission. For his work Probinsky received stock options and cash from Resorts International. After testifying, Probinsky spent the rest of 1979 travelling in the United States and abroad. In 1980, Mrs. Geisel joined Probinsky in his travels. They travelled to Florida, Mexico and North Carolina on an extended vacation to permit Mrs. Geisel to recuperate from her accident. Probinsky leased a car for use in their travels. Both Probinsky and Mrs. Geisel drove the car. Mrs. Geisel testified that the trips she took with Probinsky in 1980 were entirely for pleasure, and to her knowledge he was retired and not engaged in any business activities during the year. Probinsky and Mrs. Geisel stayed in a hotel in Florida and a *402 rented house with maid service in Mexico. Probinsky purchased a house in North Carolina in October or November 1980. Probinsky and Mrs. Geisel were married in Florida on December 13, 1980. They then returned to Mexico for approximately four weeks. Probinsky's and Mrs. Geisel's primary source of income in 1980 was interest from a trust Probinsky established for his children from a previous marriage. Before and after their marriage, Probinsky paid all of their bills and gave Mrs. Geisel money for food and other household expenses. Probinsky and Mrs. Geisel did not have a joint bank account in 1980, and Mrs. Geisel was not aware of any lavish expenditures by Probinsky. He gave her a watch for her birthday, a pair of earrings, a small diamond engagement ring and a wedding band in 1980. Probinsky's and Mrs. Geisel's life-style and level of expenditures did not change significantly from the time they met in 1979 through 1980. Probinsky did not discuss business or financial matters with Mrs. Geisel. She was aware that he had been a public relations consultant but did not know what that meant. To Mrs. Geisel's knowledge, Probinsky did not incur any business related expenses *403 in 1980. Probinsky's accountant in Florida prepared a joint Federal income tax return for the 1980 on behalf of Probinsky and Mrs. Geisel (the "1980 Return"). After filing two requests for automatic extensions of time to file, on October 15, 1982, the accountant sent the 1980 Return for signature to Probinsky and Mrs. Geisel in Miami, Florida. At that time, Probinsky and Mrs. Geisel were in New Jersey. A copy of the executed 1980 Return is not in evidence nor is the date on which the return was filed. Probinsky claimed the following business expense deductions on Schedule C of the 1980 Return: Car expenses
$ 1,800
Dues and publications
100
Insurance
447
Legal and professional services
5,145
Postage
100
Rent on business property
8,400
Telephone
1,200
Travel and entertainment
16,937
Utilities
1,200
Long-distance calls
1,640
Supplies
111
Business bad debt (§ 166)
20,000
Moving costs
1,000
Rental property maintenance
2,100
TOTAL
$ 60,180
None of the items of income or expenses reported on the 1980 return are attributable to Mrs. Geisel. Probinsky and Mrs. Geisel separated in July 1983 and were divorced *404 on April 25, 1984. Probinsky died on June 6, 1985. Respondent conducted an audit of the 1980 Return [2] which resulted in the issuance of a notice of deficiency to Probinsky and Mrs. Geisel on October 11, 1984. In the deficiency notice, respondent disallowed all of the claimed Schedule C deductions. Probinsky's attorneys Richard A. Josepher and Lawrence F. Michelson filed a timely petition on behalf of Probinsky and Mrs. Geisel on January 11, 1985. On January 28, 1985, they filed an amended petition alleging that Mrs. Geisel was an innocent spouse pursuant to section 6013(e). Mrs. Geisel was never consulted concerning the filing of the 1980 Return and did not sign the return. Mrs. Geisel did not discover that a return had been filed for 1980 and a notice of deficiency issued until after Probinsky's death in June 1985. The deficiency asserted exceeds 10 percent of Mrs. Geisel's adjusted gross income for 1983, the year before the notice of deficiency was issued. Mrs. Geisel also was not advised that a petition had been filed on her behalf until after Probinsky's death, by which *405 time the case had been pending for six months. When Probinsky's attorneys filed the petition, they did not know that Probinsky and Mrs. Geisel were divorced. Josepher testified that they had learned of the divorce after Probinsky died and then moved to withdraw from representing Mrs. Geisel in these proceedings. Josepher's partner filed the amended petition raising the innocent spouse issue in January 1985. After the petition was filed, the case was returned to respondent's appeals office for settlement discussions. Josepher, Probinsky's attorney, met with an appeals officer and provided documentation to reflect a general business purpose and a pattern of business activity in 1980. Although Probinsky's estate did not substantiate any specific amounts as deductions, the appeals officer allowed $ 15,461 in Schedule C deductions for 1980. In a Stipulation of Settled Issues filed August 11, 1987, both petitioners conceded the additional $ 44,719 in claimed Schedule C deductions were not allowable. The adjustment resulted in a remaining deficiency for 1980 of $ 28,350.83. This deficiency was calculated using rates applicable only to jointly filed returns. OPINION We must decide *406 whether Mrs. Geisel should be relieved of joint and several liability for the determined deficiency as an innocent spouse. To obtain innocent spouse relief pursuant to section 6013(e), as amended by the Tax Reform Act of 1984, [3] petitioner must establish that (1) on the joint return made for the year in issue there is a substantial understatement of tax attributable to grossly erroneous items of Probinsky; (2) she did not know and had no reason to know of such substantial understatement when she signed the return; and (3) considering all of the facts and circumstances, it would be inequitable to hold her liable for the deficiency attributable to such substantial understatement. See section 6013(e)(1); Purcell v. Commissioner,86 T.C. 228, 235 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Each of these requirements must be satisfied to obtain innocent spouse relief. A substantial understatement, for purposes of the innocent spouse provisions, means any understatement which *407 exceeds $ 500. Section 6013(e) (3). Grossly erroneous items are defined, in pertinent part, as "any claim of deduction, credit or basis by [the spouse not claiming innocent spouse relief] in an amount for which there is no basis in fact or law." Section 6013(e)(2). If the substantial understatement is attributable to such grossly erroneous items (as opposed to omitted gross income), then the liability in respect of which the alleged innocent spouse seeks to be relieved must exceed a specified percentage of such spouse's adjusted gross income for the year preceding the year in which the notice of deficiency is mailed. Section 6013(e)(4). There is no joint and several liability for the determined deficiency unless Probinsky and Mrs. Geisel filed a joint return. A copy of the executed 1980 Return is not in evidence. Mrs. Geisel's attorney made repeated efforts but was unable to obtain a signed copy from Probinsky's attorney or respondent. Respondent asserts that the original return was *408 destroyed in the ordinary course of business by the Federal Records Center on or about November 15, 1987. On August 11, 1987, respondent, Probinsky's estate and Mrs. Geisel entered into a Stipulation of Settled Issues in which they agreed that the adjustments determined for 1980 were correct to the extent of $ 44,719 and that the resulting deficiency was $ 28,350.83. On March 4, 1988, Mrs. Geisel filed a motion for leave to amend the petition to put in issue whether she and Probinsky filed a joint return for 1980. The Court granted the motion on March 8, 1988. On March 10, 1988, respondent moved for reconsideration which we denied on March 17, 1988. At a hearing on March 21, 1988, respondent orally moved this Court to vacate our Order that had permitted Mrs. Geisel to amend her petition raising the issue of whether she had filed a joint return. After a pre-trial conference, we delivered a Bench Opinion vacating our denial of respondent's motion for reconsideration, granting respondent's motion for reconsideration, and vacating our Order granting Mrs. Geisel leave to amend the petition. We reasoned that the Stipulation of Settled Issues implicitly constituted a concession that *409 Probinsky and Mrs. Geisel filed a joint return for the taxable year 1980 because the tax liability agreed to in the stipulation was calculated on the tax rate that would be applicable only if a joint return had been filed. We, therefore, found that in agreeing to the deficiency, Mrs. Geisel had agreed that she had filed a joint return with Probinsky and that absent fraud, duress, undue influence or mutual mistake of fact, she should be held to her agreement. Stamm International Corp. v. Commissioner,90 T.C. 315 (1988). Reserving the issue of whether Mrs. Geisel was an innocent spouse for trial is consistent with this concession as the joint liability issue does not exist if no joint return was filed. [4]
To be relieved of liability for the deficiency agreed to in settlement, Mrs. Geisel must establish that there was a substantial understatement of tax on the 1980 Return attributable to grossly *410 erroneous items of Probinsky. The deficiency exceeds $ 500. Section 6013(e)(3). The parties have also stipulated that the liability in respect of which Mrs. Geisel seeks to be relieved exceeds 10 percent of Mrs. Geisel's adjusted gross income for 1983, her preadjustment year. Section 6013(e)(4)(A). The substantial understatement requirement and the percentage requirement, therefore, are satisfied. Respondent argues, however, that the understatement is not attributable to "grossly erroneous" items. Grossly erroneous deductions are those with "no basis in fact or law." Section 6013(e)(2)(B). The statute is not more specific but this Court, relying on the statutory language and legislative history, has applied the standard as follows: As we read the statute as a whole and its legislative history, a deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify as a *411 deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ordinarily, a deduction having no basis in fact or in law can be described as frivolous, fraudulent, or, to use the word of the committee report [Supplemental Report of Comm. on Ways and Means, H. Rept. 98-432 (Part 2), 98th Cong. 2d Sess. 1502 (1984)], phony.
Douglas v. Commissioner,86 T.C. 758, 762-763 (1986). A taxpayer may not, however, rely on the mere disallowance of the claimed deductions or an inability to substantiate the amount of otherwise allowable deductions to establish a lack of basis in fact or law for the deductions disallowed. Douglas v. Commissioner, supra at 763. [5]
Respondent contends that the claimed Schedule C deductions were disallowed for lack of substantiation, not because they had no basis in fact of law. Thus, they are not grossly erroneous items. Respondent notes that Probinsky presented some evidence to support his *412 business purpose for his expenditures to respondent's appeals officer and, as a result, a portion of the claimed deductions was allowed. The material presented to the appeals officer, however, did not relate to any particular deduction, and the appeals officer did not specify which deductions he was allowing and disallowing. Instead he compromised the dispute and allowed approximately 25 percent of the total amount claimed. From the appeals officer's actions respondent concludes that none of the items claimed were grossly erroneous and that they were disallowed only for lack of substantiation. We first note that we are not bound by the appeals officer's determination which is intended to dispose of the case by settlement and compromise not to press the issues to a hard and fast decision of which side is "correct." Next we observe that the appeals officer's resolution of this case, as a settlement, falls within the scope of rule 408, Federal Rules of Evidence, and is not admissible evidence. Petitioner, however, did not object to the admissibility of the evidence of the appeals officer's *413 compromise under Rule 408, Federal Rules of Evidence, and consequently we considered it. Upon consideration, we believe that we have no reason to infer that the amounts disallowed by respondent had any basis in fact or law. The appeals officer could have settled the case on any grounds. More important, however, is that the allowance of some of the deductions is not in this case sufficient evidence to support a finding that the disallowed deductions would have been allowable but for lack of particular substantiation. Our conclusion is not a criticism of the appeals officer's settlement. Indeed, the appeals officer may have made the same determination that we have made, viz, there is no basis in fact or law to support the disallowed deductions. We believe that Mrs. Geisel has presented sufficient evidence to make out a prima facie case that much of the claimed expenses were for personal rather than for business activities. In the face of her testimony, there is no reason to infer that mere lack of substantiation was the ground on which the appeals officer disallowed the deductions. In this circumstance, the burden of going forward with evidence to establish that any of the disallowed *414 deductions was valid shifts to respondent, and he has not met that burden. Probinsky claimed business expense deductions for, among other things, his leased car, postage, rent on business property, telephones and telephone calls, travel and entertainment, utilities, supplies and moving expenses. Mrs. Geisel testified that the leased car was used for pleasure, not business, and that she and Probinsky travelled extensively in 1980 for pleasure. To her knowledge, Probinsky did not incur expenses for business-related entertainment nor did they move for business reasons in 1980. Probinsky told Mrs. Geisel that he was retired and to her knowledge he did not conduct any business in 1980. Mrs. Geisel's testimony withstood cross-examination and was not contradicted by other evidence. Mrs. Geisel did not produce evidence to refute each of the claimed business expense deductions and does not know which deductions were allowed and disallowed. Respondent thus argues that she has not met her burden of proof. We do not believe, however, that Mrs. Geisel must refute each claimed deduction. She has presented evidence to refute any basis in fact or law for a significant amount of the claimed *415 deductions and has shown a general pattern of Probinsky's claiming personal expenses as business expenses. Given that none of the expenses are attributable to Mrs. Geisel, that Probinsky never discussed financial or business matters with her and that he told her that he was retired in 1980, we do not think Mrs. Geisel could be expected to do more. Respondent offered no evidence on the matter other than the settlement itself. We hold that there was no basis in fact or law for the disallowed deductions, and the understatement of tax for 1980 is, therefore, attributable to "grossly erroneous items" within the meaning of section 6013(e)(2)(B). Mrs. Geisel must also prove that in signing the return, she did not know and had no reason to know of Probinsky's substantial understatement. The standard to be applied in determining whether Mrs. Geisel had reason to know of the substantial understatement is whether a reasonable person in petitioner's circumstances could have been expected to know at the time the return was executed. Sanders v. United States,509 F.2d 162, 166-167 (5th Cir. 1975); *416 Terzian v. Commissioner,72 T.C. 1164, 1170 (1979). Respondent argues that Mrs. Geisel had a duty to review the 1980 Return before it was filed and, had she done so, she would have known that the Schedule C deductions resulted in a substantial understatement. The premise underlying respondent's argument is that Mrs. Geisel saw and was given an opportunity to review the 1980 Return before it was filed. She testified, however, that she did not sign the 1980 Return, was not consulted about it and did not even know of its existence until after Probinsky's death in 1985. Her testimony was corroborated in part by the testimony of Probinsky's attorney whose partner filed the petition on behalf of Mrs. Geisel without consulting her. When Probinsky and Mrs. Geisel married in 1980, he was 61 and had extensive business experience; she was 23, with a high school education and no experience in business or financial matters. Mrs. Geisel was unemployed in 1980. She knew that Probinsky was involved in public relations work prior to 1980, but did not know what that entailed. Probinsky told her that he was retired in 1980, and she had no reason not to believe him. Probinsky *417 never discussed business matters with Mrs. Geisel and seems to have made a concerted effort to keep her ignorant about his finances. Probinsky and Mrs. Geisel did not have a joint bank account in 1980. He paid all of the bills and periodically gave her money for household expenses such as food. A factor that courts have focused on in deciding whether a purported innocent spouse had reason to know of a substantial understatement is whether the couple's standard of living improved significantly as a result of the understatement. Mysse v. Commissioner,57 T.C. 680, 698 (1972). [6] A wife cannot close her eyes to unusual or lavish expenditures or other factors that might give her reason to know of unreported income. Mysse v. Commissioner, supra at 699. Probinsky made no unusual or lavish expenditures in 1980. He bought Mrs. Geisel a watch for her birthday, a pair of earrings and an engagement ring and wedding band. Probinsky's standard of living did not change significantly from the time he met Mrs. Geisel in 1979 through 1980. *418 Probinsky's accountants prepared the 1980 Return and his attorneys dealt with respondent when he commenced an audit of the 1980 Return. The accountants and attorneys never consulted with Mrs. Geisel. In fact, the attorneys were not even aware that Probinsky and Mrs. Geisel were divorced until after Probinsky's death. Probinsky's not giving Mrs. Geisel an opportunity to review the 1980 Return is consistent with his total control over their finances. All of the items of income, deductions and credits on the Return are attributable to Probinsky. Mrs. Geisel had no taxable income in 1980 and knew only that Probinsky received income from a trust he established for his children. Moreover, Probinsky and Mrs. Geisel were married for only 18 days in 1980, and Mrs. Geisel did not have sufficient taxable income in 1980 to have been required to file a return. On these facts, we conclude that even if Mrs. Geisel knew that a return had been filed on her behalf, she would not have known or had reason to know that there was a substantial understatement of tax. Terzian v. Commissioner,72 T.C. at 1171. *419 The final requirement for innocent spouse relief is that, given all of the facts and circumstances, it would be inequitable to hold the spouse seeking relief as an innocent spouse liable for the deficiency attributable to the substantial understatement. Section 6013(e) was designed to remedy an injustice, and we will not hinder that purpose by giving the section an unduly narrow or restrictive reading. Allen v. Commissioner,514 F.2d 908, 914 (5th Cir. 1975), affg. in part and revg. and remanding in part on other grounds 61 T.C. 125 (1973). [7] For all of the reasons mentioned above, we believe that it would be grossly inequitable to hold Mrs. Geisel liable for the deficiency in this case. Mrs. Geisel is, therefore, an innocent spouse within the meaning of section 6013(e). Decision will be entered for petitioner Marci Probinsky and for respondent as to petitioner Estate of David Probinsky in the agreed amount.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for 1980. ↩
2. The record does not indicate the time period during which the audit was conducted. ↩
3. The Tax Reform Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802, amended section 6013(e)↩ retroactively to all open years to which the Internal Revenue Code of 1954 applies. 4. Mrs. Geisel filed a Motion to Vacate Stipulation of Settled Issues and to Reinstate the Court's Order of March 8, 1988. We held an evidentiary hearing on this motion on July 25, 1988. In light of our disposition of the other issues presented, this motion is moot. ↩
5. Neary v. Commissioner,T.C. Memo. 1985-261↩. 6. See also Bousko v. Commissioner,T.C. Memo. 1987-574; Quint v. Commissioner,T.C. Memo. 1985-226↩. 7. Estate of Killian v. Commissioner,T.C. Memo. 1987-365↩.