Yvonne E. NESS, Petitioner–Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 90–70393.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1991.

Decided Jan. 24, 1992.

Curtis W. Berner, Buell & Berner, San Francisco, Cal., for petitioner-appellant.

Shirley D. Peterson, Gary R. Allen, David English Carmack, and Teresa T. Milton, Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent-appellee.

Before TANG, REINHARDT and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Gordon Ness ("Mr. Ness") claimed a federal income tax deduction of $103,331 in 1981. Of this amount, $67,806 was determined to be nondeductible because it was not considered to be "at risk," as required by 26 U.S.C. § 465 (1988). Yvonne Ness ("Mrs. Ness") sought relief under the innocent-spouse provision, which, in certain situations, relieves a spouse of tax liability for the understatement of taxes on joint forms. The Tax Commissioner concluded Mrs. Ness met all the criteria of the innocent-spouse provision except the requirement that the deduction be "grossly erroneous." The tax court agreed and denied Mrs. Ness relief. *Ness v. Comm'r*, 94 T.C. 784 (1990). We reverse.

## I

In 1981, Mr. Ness contributed $106,541 to a limited-partnership interest in Research Investors Group ("RIG")—$35,525 in cash and $71,016 in promissory notes signed by Mr. Ness and made payable to Menlo Research Corp. ("MRC"). MRC was wholly owned by Mr. Ness. Mr. Ness formed RIG as a way to enable certain employees of Stanford Scientific, Inc. ("SSI") and his personal friends and relatives to invest in one or more of his research-and-development partnerships. Mr. Ness' investment was allocated among four research-and-development limited partnerships: (1) Custom PCB Chemicals; (2) Earthquake Command System; (3) Automated Blood Pressure; and (4) Princess Heart Watch.[1] The general partner in each partnership was SSI, also wholly-owned by Mr. Ness.

In 1981, the Nesses claimed a deduction of $103,331 for their share of losses from RIG. After an audit, the Tax Commissioner determined that some of the losses were not allowable as deductions because they exceeded the amount of the Nesses' investment that was "at risk" as defined by 26 U.S.C. § 465.[2]

---

1. The notes signed by Mr. Ness and payable to MRC were as follows:

| | |
|---|---|
| Custom PCB Chemicals | $20,000 |
| Earthquake Command System | $21,016 |
| Automated Blood Pressure | $10,000 |
| Princess Heart Watch | $20,000 |
| Total: | $71,016 |

2. 26 U.S.C. § 465 reads in part:

  (a) *Limitation to amount at risk.—*

    . . . .

    (B) a C corporation with respect to which the stock ownership requirement of para-

The Nesses agreed with that finding and the parties here stipulate that $67,806 of the deduction did not constitute an amount "at risk" within the meaning of 26 U.S.C. § 465(b); thus only $35,525 was tax deductible. After recomputing their tax liability, the Nesses owed $24,497.37.

■ Mrs. Ness seeks to avoid liability for this tax deficiency under the innocent-spouse provision, 26 U.S.C. § 6013(e) (1988). To qualify for innocent-spouse relief, the amount of tax owing must be attributable to a "grossly erroneous item" within the meaning of section 6013(e)(2). Although section 6013(e) contains several criteria, the Tax Commissioner concedes that only the "grossly-erroneous-item" requirement of section 6013 was not satisfied.

Mrs. Ness' argument in tax court distinguished the *permissible* amount of the RIG partnership deduction—the cash investment—from the *impermissible* amount—the promissory notes. She claimed the latter amount was not deductible in 1981 because any such deduction lacked a basis in law in view of the section 465 "at risk" limitation. Thus, that portion of the deduction was "grossly erroneous."

The tax court rejected this distinction and found that because part of the RIG partnership deduction was allowable, the rest could not be considered a "grossly erroneous" item. Limiting the deduction, therefore, did not make it baseless in fact or law.

Mrs. Ness appeals the tax court's holding.

## II

"We review decisions of the Tax Court on the same basis as decisions in civil bench trials in the district courts." *Sliwa v. Comm'r*, 839 F.2d 602, 605 (9th Cir.1988). The only issues before the court are questions of law that are to be reviewed de novo. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984); *see also United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988) (the appeals court should consider the matter anew, the same as if it had not been heard before, and no decision was previously rendered).

## III

The facts in this case are stipulated. The two legal issues are (a) whether a deduction can be bifurcated and one part of it be deemed "grossly erroneous" when another part of the deduction is allowable; and, if so, (b) whether in Mrs. Ness' case, the $67,806 not "at risk" had a basis in law, and was not "grossly erroneous."

### A

■ Generally, "marital partners are jointly and severally liable for income tax owed when they sign a joint return." *Guth v. Comm'r*, 897 F.2d 441, 442 (9th Cir.1990); 26 U.S.C. § 6013(d)(3). However, to avoid inequity, Congress created an "innocent-spouse exception." *See* 26 U.S.C. § 6013(e). In 1984, Congress extended that protection to " 'substantial un-

---

graph (2) of section 542(a) is met, engaged in an activity to which this section applies, any loss from such activity for the taxable year shall be allowed only to the extent of the aggregate amount with respect to which the taxpayer is at risk (within the meaning of subsection (b)) for such activity at the close of the taxable year.

. . . .

(b) *Amounts considered at risk.*—

(1) *In general.*—For purposes of this section, a taxpayer shall be considered at risk for an activity with respect to amounts including—
(A) the amount of money and the adjusted basis of other property contributed by the taxpayer to the activity, and

(B) amounts borrowed with respect to such activity

. . . .

(3) *Certain borrowed amounts excluded.*—
(A) *In general.*—Except to the extent provided in regulations ... amounts borrowed shall not be considered to be at risk with respect to an activity if such amounts are borrowed from any person who has an interest in such activity or from a related person to a person (other than the taxpayer) having such an interest.

derstatement[s] of tax ... attributable to grossly erroneous items ... including claims for deductions or credits, as well as omitted income.' " *Id.* at 443 (quoting H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1502, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1143).

It is stipulated that Mrs. Ness meets all but one of the criteria for the innocent-spouse exception. The Commissioner contends that the deduction fails to satisfy the "grossly erroneous" section of the statute. Section 6013 reads in relevant part:

> *Sec. 6013. Joint returns of income tax by husband and wife*
>
> . . . .
>
> (e) *Spouse relieved of liability in certain cases.*
>
> . . . .
>
> (2) *Grossly erroneous items.*—For purposes of this subsection, the term "grossly erroneous items" means, with respect to any spouse—
>
> (A) any item of gross income attributable to such spouse which is omitted from gross income, and
>
> (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact or law.

26 U.S.C. § 6013(e).

Not all disallowances of deductions are "grossly erroneous." *Douglas v. Comm'r,* 86 T.C. 758, 762 (1986). The innocent spouse statute itself does not define what constitutes "no basis in fact or law," but a

> clue to its meaning ... is found in the reference in the ... committee report to 'phony business deductions.' As we read the statute as a whole and its legislative

history, a deduction has no basis in fact when the expense for which the deduction is claimed was never, in fact, made. A deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility.

*Id.* at 762–63. *See also Ness,* 94 T.C. at 786.

In the instant case, only $35,525 of the $103,331 could be claimed as a deduction. The Commissioner argues, and the tax court held, that any claimed deduction must be viewed as an indivisible whole for the purposes of determining whether it was "grossly erroneous." It then follows that any item which is partly allowed cannot be wholly without legal basis. Therefore, if part of the deduction is based in fact or law, the rest cannot be "grossly erroneous." [3]

However, here the $67,806 portion of the deduction *is* "grossly erroneous." The basis for the disallowance was legal, not factual, because the plain language of section 465 prohibits the deduction. *See* Meade Emory, *Is Tax Court Right in Narrow Reading of "Grossly Erroneous" for Innocent Spouse Relief?,* 1990 Fed. Taxes (P–H) ¶ 85,226 (PHINet citation: 94.-47PHTC) [hereinafter Emory]. "In construing a statute, we look first to its plain meaning." *Price v. Comm'r,* 887 F.2d 959, 963 (9th Cir.1989) (citation omitted). The statute bars deductions "if such amounts are borrowed from any person who has an interest in such activity or from a related person to a person (other than the taxpay-

---

**3.** Previous tax court cases have skirted this issue. In *Estate of David Probinsky,* 55 T.C.M. (CCH) 1546 (1988), the court held that just because the appeals division settled on 25% of deductions, this should not preclude finding the other 75% grossly erroneous. However, the court explicitly stated that "we are not bound by the appeals officer's determination which is intended to dispose of the case by settlement." *Id.* at 1550.

In *Sue S. Levin v. Comm'r,* 53 T.C.M. (CCH) 6 (1987), there was a net loss of $137,011; of that loss, $40,000 was allowed and $97,011 was disallowed. The Commissioner then discussed the

knowledge element of the innocent-spouse provision and found that Levin failed to carry her burden on this element. Conceivably, the court would not have discussed the knowledge element if the $97,011 was not grossly erroneous (because the $40,000 was allowed). The court appeared to assume that a portion of a deduction *can* be grossly erroneous. However, as the Commissioner in the instant case points out, there was no discussion of what constitutes "no basis in law." Indeed, the tax court could have found against Levin on the grossly erroneous ground as well. It was simply never discussed.

er) having such an interest." 26 U.S.C. § 465(b)(3). This clearly applies to Mr. Ness' $67,806 of promissory notes from interested parties. No deduction explicitly excluded by the plain words of the statute could qualify as a deductible expense under "well-settled legal principles."

The Commissioner's argument that the single deduction of $103,331 is indivisible in the instant case appears to be pure sophistry. The Commissioner may have been misled because on the Nesses' tax form, their wrongly claimed deductions for funds not "at risk" were combined with legitimate deductions (thus, there was only one deduction). However, under Code section 465, there are two kinds of losses. There are those for which the investor is "at risk" and those for which he is not "at risk." There is no basis in law to take a deduction on those funds not "at risk."

A rule such as the tax court's would give the Commissioner carte blanche to by-pass the innocent-spouse exception in virtually every case. Theoretically, even if only one dollar of a deduction were allowed and one million dollars were not allowed, the entire deduction would be disqualified under the innocent-spouse exception, because one could not fragment a deduction into two parts. Moreover, "[i]t is not rare ... for the IRS, during the examination process, to concede part of an item (for example, on a 'hazards of litigation' basis); but, this should not mean that it would be impossible to classify the disallowed part as 'grossly erroneous.' " Emory, *supra*, at ¶ 85,226. Why should the allowance of part of a

deduction mean that the rest of the deduction was not "grossly erroneous"? We find that a spouse should be able to claim that part of a lump sum deduction is "grossly erroneous." [4]

### B

■ The Commissioner's most persuasive argument is that the deduction had a basis in law because the entire $103,331 sum was a proper partnership deduction.[5] The "at risk" rules do not apply to the partnership provision, only to the partners themselves. The Commissioner, therefore, insists that the "deduction was proper. Only the amount thereof that could be taken in 1981 was affected by Section 465."

Under section 704(d) [6] $103,331 would have been the legitimate share of the deductible partnership losses. That section allows a distributive share of the partnership's losses to be deductible to the extent of a partner's adjusted basis in the partnership. Section 705(a) provides that a partner's basis is the amount of money and other property that contributed to the partnership. These sections, according to the Commissioner, give a basis in law to the full deduction.

■ However, as the Commissioner notes himself, section 465 limits the amount that would otherwise be deductible under sections 704(d) and 705. Even if an amount had a basis in law under sections 704(d) and 705 with respect to the distribution of losses in *partnerships*, there would be no basis in law for the *individual tax-*

---

4. Our decision is consistent with Congress' apparent intent not to extend innocent spouse protection to shield against liability for arguably proper deductions that are later disallowed. *See* H.R.Rep. No. 432, 98th Cong., 2d Sess., pt. 2, at 1501–02, reprinted in 1984 U.S.Code Cong. & Admin.News 697, 1142–43 (indicating intent to broaden relief beyond liability for erroneous omission of gross income to include liability for "phony" deductions). The present case concerns a deduction composed of an unquestionably allowable component, and a component that lacks any basis in law or fact. This simply is not a case wherein the tax preparer could have been claiming a questionable deduction in reliance on the "innocent spouse" provision.

5. Although this argument was not explicitly stated in the briefs, at oral argument, the Commissioner stressed that the legitimate nature of the partnership deduction was one reason *why* the Commissioner believed that the disallowed deduction had a basis in law, and why, in the particular case of the Nesses, the Commissioner believed that the disallowed portion of the deduction might be deductible in a future year.

6. Section 704(d) reads, in pertinent part: "Limitation on allowance of losses.—A partner's distributive share of partnership loss ... shall be allowed only to the extent of the adjusted basis of such partner's interest in the partnership at the end of the partnership year in which such loss occurred." 26 U.S.C. § 704(d) (1988).

*payer* to take a deduction not allowed under section 465.

It does not follow that if a deduction has a legal basis at the partnership level, it necessarily has a legal basis at the individual level. Mr. Ness could claim a percentage share of a legitimate and allowed partnership loss, but because of the "at risk" rules, he had no legal basis to deduct the disputed amount from his personal income taxes. In this case, the section 465 limitation destroys the legal basis of the deduction. Given section 465, the $67,806 deducted by Mr. Ness was *an amount* with no legal basis (because the promissory notes could never be "at risk"), and, therefore, was "grossly erroneous."

■ The Commissioner also argues that these losses have a basis in law because promissory notes can be converted to cash in a later year and then treated as a loss and deducted. The deduction of $67,806 then, according to the Commissioner, would have a basis in law because the deduction could be taken in a future year.

This argument resembles one rejected in *Shenker v. Comm'r*, 804 F.2d 109 (8th Cir.1986), *cert. denied* 481 U.S. 1068, 107 S.Ct. 2460, 95 L.Ed.2d 869 (1987). In *Shenker*, the Eighth Circuit overturned the tax court's decision to deny innocent-spouse relief. The husband took a deduction in 1971 although the loss did not occur until 1972. The tax court held the deduction was not "grossly erroneous" because "the loss had in fact occurred at some point." *Id.* 804 F.2d at 115. The Eighth Circuit reversed, holding that section 165 of the Code (involving losses) states that "there must be some basis not only for claiming that a loss occurred, but also for claiming that it was sustained during the taxable year in question." *Shenker*, 804 F.2d at 115 (citing 26 U.S.C. § 165(a) (1988)). There was *no* ground to say that the loss occurred in 1971. The court, therefore, allowed the innocent-spouse relief even though the deduction that was "grossly erroneous" in 1971 could have been properly deductible in the next taxable year.

We adopt the same reasoning as the Eighth Circuit. Whether the loss may be eligible for deduction in some future year is irrelevant to the determination of the Nesses' 1981 taxes. *See Security Flour Mills Co. v. Comm'r*, 321 U.S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725 (1944) (" '[a]ll revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all taxpayer's transactions during a fixed accounting period' ") (quoting *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363, 51 S.Ct. 150, 151, 75 L.Ed. 383 (1931)).

In order to be available in another year, Mr. Ness would have had to, for example, convert the promissory notes to cash. But, this hypothetical possibility did *not* create a basis in law for the promissory notes in 1981.

## IV

Given that we are only looking at the Nesses' individual income tax deductions for the tax year 1981, the instant case readily lends itself to a clear division of allowable and non-allowable funds. Although the Nesses' tax form lists a single deduction of $103,331, the audit revealed that this number is composed of two parts: cash investment and promissory notes. It was a direct violation of section 465 for Mr. Ness to deduct the notes on the couple's personal income tax return for 1981; thus there was no basis in law for his doing so. Nothing in the statute supports the tax court's holding, nor the Commissioner's claim that an illegal deduction cannot be "grossly erroneous" if it is part of a larger deduction which is partly allowable. A rotten apple is no less rotten just because it is in a basket with some good apples.

## V

We reverse the tax court and hold that: (1) a portion of a deduction may be "grossly erroneous" even if another portion of the same deduction is allowed; and (2) in the Nesses' case, the deduction of $67,806 was "grossly erroneous" because the plain lan-

guage of the statute bars a deduction for funds not "at risk."

REVERSED.