JENNIE L. ALLEC, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allec v. Commissioner
Docket No. 26982-90
United States Tax Court
T.C. Memo 1992-314; 1992 Tax Ct. Memo LEXIS 336; 63 T.C.M. (CCH) 3088; T.C.M. (RIA) 92314; June 3, 1992, Filed *336 Decision will be entered under Rule 155. Brad S. Ostroff, for petitioner. Susan E. Seabrook, for respondent. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined deficiencies in petitioner and her husband's Federal income taxes as follows: Year Ended
Deficiency
12/31/83
$ 37,078
12/31/85
8,516
12/31/86
18,852
12/31/87
3,806
The sole issue for decision is whether petitioner is relieved of liability for taxes because she qualifies as an "innocent spouse" within the meaning of section 6013(e). [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Yuma, Arizona, at the time she filed her petition in this case. At the time of trial, *337 petitioner was married to, but legally separated from, her husband, Camille Allec, Jr. (Camille). Petitioner and Camille were married on July 26, 1952. Petitioner was 20 years old at the time, and Camille was serving in the United States Navy. Camille was stationed at the Great Lakes Naval Air Station in Illinois when he and petitioner were married. After joining her husband at the Great Lakes Naval Air Station, petitioner was employed for 3 months as a sales clerk at the Naval Exchange. With the exception of this employment, petitioner has spent her entire married life as a homemaker, raising her and Camille's six children. Petitioner has never received any formal business education, nor has she had any significant business experience. After Camille left the Navy in 1955, he and his family moved to Anaheim, California, where he began working in his father's (Mr. Allec) citrus farming operation. In the fall of 1964, Mr. Allec purchased additional farmland in Yuma, Arizona. Camille moved to Yuma first to oversee his father's operations there, and petitioner and the children joined him later. When petitioner arrived with the children, she learned that Camille had purchased *338 the family's first home without consulting her. In the late 1960s or early 1970s, Mr. Allec formed a subchapter S corporation, C. Allec Co., through which he operated his citrus farming and custom grove-care business. Although Mr. Allec initially owned all the stock in C. Allec Co., over time he gradually distributed stock to his daughter, and to Camille and petitioner and their children. Camille continued to work for his father's citrus farming operation and was eventually made vice president/manager of C. Allec Co. Although petitioner was named treasurer of C. Allec Co., her activities were limited to sporadic, ministerial functions such as executing checks when no one else with signature authority was available. Petitioner never received compensation as a corporate officer, never attended board meetings, and had no contact with clients other than seeing them at social gatherings. In addition to C. Allec Co., Camille was also involved in an auto-parts business operating as a partnership under the name D & M Discount Auto Supply (D & M). Camille was a 15-percent "silent partner" in D & M. Two other partners owned the remaining 85-percent interest in D & M. In 1983, the two *339 other partners filed personal bankruptcy. Prior to the filing of bankruptcy by the two other partners, Camille had advanced funds to cover debts of the partnership. Petitioner was not a partner in D & M, and basically she had no knowledge of its business operations. During the years in issue, petitioner and Camille filed joint income tax returns. Camille did not inform petitioner of the family's financial and tax matters. With respect to the family's tax matters, Camille typically waited until the last day to file their returns. On that day, Camille presented the return to petitioner for signature. Over the years, petitioner asked her husband to explain the tax documents she was signing. He never did. Sometimes he responded angrily to these requests. At other times, because it was the last day for filing, he told her he would explain later. Camille's refusal to explain the family's tax matters to petitioner created tension between the two. On their 1983 joint income tax return, petitioner and Camille reported a $ 43,651 loss from D & M. Respondent disallowed $ 11,464 of this loss, which represented Camille's 15-percent share of a $ 76,427 bad debt loss which D & M claimed *340 on its partnership return. D & M was unable to substantiate this loss during its partnership level audit. Petitioner and Camille also reduced their taxable income in 1983 by $ 748,681 to reflect an alleged business bad debt. This claimed business bad debt related to the debts of D & M that Camille claimed to have paid. When his partners declared bankruptcy in 1983, Camille decided the debts had become uncollectible. Respondent disallowed $ 173,925 of the alleged business bad debt because petitioner and Camille had not established that they incurred this portion of the claimed business bad debt during 1983. On their 1983 joint income tax return, petitioner and Camille reported a loss in the amount of $ 599,287. The Form 4797 and attached schedule, which were filed with petitioner and Camille's 1985 return, state that this loss represented 85 percent of the loans that Camille had advanced on behalf of D & M, and that because the owners of the remaining 85 percent of the partnership had declared bankruptcy, the loans were uncollectible. Respondent disallowed the loss based on her determination that this loss was duplicative of the business bad debt loss claimed in 1983, and that *341 since the other partners declared personal bankruptcy in 1983, the loans were, to the extent allowed, properly claimed as worthless in 1983. The loss claimed in 1985 resulted in a net operating loss that was carried over to 1986 and 1987. Respondent disallowed these net operating loss carryovers. C. Allec Co. issued a Schedule K-1 to petitioner and Camille for the taxable year 1987. This Schedule K-1 correctly reflected petitioner and Camille's distributive share of C. Allec Co.'s income for 1987 as $ 8,314. Petitioner's joint income tax return for 1987 did not reflect this item of income. Respondent included it in her determination for 1987. Prior to, and during the years in issue, petitioner never saw a Schedule K-1 issued by C. Allec Co.
Prior to and during the years in issue, petitioner and her family maintained a modest lifestyle. Their family of eight lived in a 2,400-square-foot house which they purchased in 1971 for $ 40,000. Petitioner did not receive extravagant gifts from her husband, and their family did not indulge in lavish or unusual expenditures. Indeed, petitioner's husband told her that they had no money for basic expenses like repairing her car. At the *342 time of trial, petitioner and her husband were in the process of obtaining a divorce. Petitioner initiated divorce proceedings after learning that her husband had at least one affair and spent money on a mistress while telling petitioner that they had no money. OPINION Section 6013(d)(3) imposes joint and several liability on spouses who file a joint return. Under section 6013(e), an "innocent spouse" is relieved of this joint and several liability. Petitioner contends she is an "innocent spouse" and, as such, is relieved of the joint and several liability imposed by section 6013(d)(3). Respondent contends petitioner fails to meet the requirements of section 6013(e). Section 6013(e) sets out the following requirements which must be satisfied in order to qualify as an innocent spouse: (1) A joint return has been made; (2) a substantial understatement of tax attributable to grossly erroneous items of one spouse exists; (3) the other spouse establishes that in signing the return, he or she did not know, and had no reason to know, that there was such substantial understatement; and (4) taking into account all the facts and circumstances, it is inequitable to hold the other spouse *343 liable for the deficiency attributable to the substantial understatement. All four statutory requirements must be met for the taxpayer to be afforded relief. Estate of Jackson v. Commissioner, 72 T.C. 356, 360-361 (1979). Petitioner bears the burden of proving that each element has been satisfied. Rule 142(a); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). The deficiency in 1983 results from respondent's determination that $ 173,925 of a $ 748,681 bad debt deduction was not allowable and that the proper amount of loss from D & M was $ 32,187, rather than the $ 43,651 reported on the return. Respondent's primary position is that neither of these items is "grossly erroneous" within the meaning of section 6013(e)(1)(B). If respondent is correct, petitioner does not meet the requirements for innocent spouse protection. Section 6013(e)(2) defines grossly erroneous items as follows: (2) Grossly erroneous items. -- * * * (A) any item of gross income attributable to such spouse which is omitted from gross income, and (B) any claim of a deduction, credit, or basis by such spouse in an amount for which there is no basis in fact *344 or law.
Both of the adjustments in 1983 relate to deductions for bad debts. Thus, petitioner must demonstrate that each deduction has no basis in fact or law in order for this Court to find that it is grossly erroneous. Although section 6013 does not define the phrase "no basis in fact or law", courts have held that a deduction has no basis in fact when the expense for which the deduction is claimed was not made, and a deduction has no basis in law when the expense, even if made, does not qualify as a deductible expense under well-settled legal principles or when no substantial legal argument can be made to support its deductibility. Ness v. Commissioner, 954 F.2d 1495, 1498 (9th Cir. 1992), revg. 94 T.C. 784 (1990); Douglas v. Commissioner, 86 T.C. 758, 762-763 (1986). Petitioner has failed to prove that the disallowed deductions in 1983 had no basis in fact. Respondent disallowed both of the deductions because of an inability to substantiate. Petitioner, however, may not rely on respondent's disallowance, alone, to prove a deduction has no basis in fact. Douglas v. Commissioner, supra at 763. *345 [2] Petitioner presented insufficient additional evidence to prove that the disallowed deductions had no basis in fact. Similarly, the record does not establish that the disallowed deductions had no basis in law. Indeed, the record suggests that had petitioner or her husband substantiated the deductions, respondent would have allowed them. In other words, the expenses, if demonstrated to have occurred, would have qualified for a deduction under well-settled legal principles. Because petitioner has failed to prove that these deductions have no basis in fact or law, we find that they are not attributed to grossly erroneous items of the other spouse. Thus, innocent spouse relief is not appropriate for the taxable year 1983. *346 We are aware of the recent Ninth Circuit decision in Ness v. Commissioner, supra.[3]Ness involved a deduction that the Commissioner disallowed to the extent the taxpayers were not at risk in an investment. In Ness, the parties stipulated that to the extent the deduction was disallowed, the taxpayer husband was not at risk within the meaning of section 465(b). The Ninth Circuit held that under these circumstances, the portion of the deduction which was disallowed had no basis in law and, therefore, was grossly erroneous. We distinguish Ness on the basis that here, petitioner failed to establish a record which supports a conclusion that the deductions had no basis in fact or law. Indeed, unlike Ness, the record indicates that had petitioner or her husband actually substantiated the alleged bad debts, the debts would have been deductible. *347 The deficiency in 1985 results from respondent's disallowance of a claimed loss deduction in the amount of $ 599,287. Respondent concedes that a joint return was made and that the adjustment relates to an item of petitioner's husband. Respondent's primary position here is that this item is not grossly erroneous. At trial, petitioner proved that respondent disallowed this loss based on her determination that petitioner and her husband previously deducted this loss as a bad debt expense in 1983. The record also indicates that the debt actually became worthless in 1983 and that it was properly deductible, to the extent allowed, in that year. Petitioner has established that the debt did not become worthless in the year deducted as required under section 165. We conclude that this deduction had no basis in fact or law in 1985. See Shenker v. Commissioner, 804 F.2d 109 (8th Cir. 1986) (holding that a loss claimed in one year under section 165 which in fact occurred in another year (and therefore properly deductible in that other year) had no basis in fact or law and was grossly erroneous under section 6013(e). This analysis was adopted by the Ninth Circuit in *348 Ness v. Commissioner, supra.). Respondent also argues that petitioner is not entitled to innocent spouse relief because petitioner failed to prove that she had no reason to know that there was a substantial understatement. [4]In the Ninth Circuit, a spouse has "reason to know" that a substantial understatement exists if, at the time the return was signed, a reasonably prudent taxpayer in the spouse's position could be expected to know that the return contained the substantial understatement. Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989), revg. an Oral Opinion of this Court. In applying the standard articulated in Price, the following factors are considered: (1) The spouse's level of education; (2) the spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances. Price v. Commissioner, supra.
*349 In this case, petitioner had 2 years of college education, but she had no formal business education or other significant business experience. Petitioner had an insignificant role in the family's business and financial affairs. There were no lavish or unusual expenditures during the years in issue when compared to the family's lifestyle in prior years or otherwise. The record indicates that petitioner affirmatively sought to learn about her and Camille's tax returns, but that Camille rebuffed her inquiries. Respondent argues that Camille's evasiveness, in conjunction with other factors, should have aroused petitioner's suspicions and created a duty of further inquiry as to the legitimacy of the disallowed deductions. We disagree. The record indicates that petitioner made inquiries with the most obvious source for this information, Camille. Petitioner testified, and we believe, that other sources of this information were, as a practical matter, unavailable. After reviewing the entire record, we are convinced that petitioner did not have reason to know that the understatement existed. Finally, respondent argues that it is not inequitable to hold petitioner liable for the deficiency *350 in issue for 1985. Whether it is inequitable to hold a person liable for a deficiency is based on all the facts and circumstances of the particular case. Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); sec. 1.6013-5(b), Income Tax Regs. When determining whether it is inequitable to hold the taxpayer liable for a deficiency, courts have traditionally focused on whether the taxpayer seeking innocent spouse relief significantly benefited, either directly or indirectly, from the wrongfully claimed deductions. Purcell v. Commissioner, supra.The record indicates that petitioner lived a modest lifestyle during the years in issue, and we think petitioner has established that she did not significantly benefit, either directly or indirectly, from the wrongfully claimed deduction. Under these circumstances, we find it inequitable to hold petitioner liable for the deficiency in issue for 1985. [5]
*351 Part of the deficiency for 1987 is attributed to the inclusion of the $ 8,314 distributive share reflected on the Schedule K-1 issued by C. Allec Co. Respondent concedes that this is a grossly erroneous item. Respondent's primary position is that petitioner failed to prove this item of income was attributable to Camille. Although Arizona is a community property state, Ariz. Rev. Stat. Ann. sec. 25-211 (1991), community property laws are disregarded when determining whether an income item (other than gross income from property) is attributable to one particular spouse. Sec. 6013(e)(5). The record indicates that income generated by C. Allec Co. resulted from the performance of substantial services by Camille. Thus, the income item reflected on the Schedule K-1 issued by C. Allec Co. is attributed to Camille. Allen v. Commissioner, 61 T.C. 125, 130 (1973), revd. on other grounds 514 F.2d 908 (5th Cir. 1975). Moreover, we find, as we did for taxable year 1985, that petitioner did not know, nor did she have reason to know, of the substantial understatement and that it is inequitable to hold petitioner liable for this portion of the deficiency. *352 Thus, petitioner is relieved of liability for the portion of the deficiency in 1987 attributable to this adjustment. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Allowing petitioner to satisfy her burden of proving that a deduction has no basis in fact based on respondent's disallowance of a deduction due to an inability to substantiate would, in effect, eliminate the grossly erroneous requirement in many cases. This is because many of the deductions which give rise to the deficiencies, the liability for which the petitioning spouse seeks to avoid under sec. 6013(e)↩, would automatically be grossly erroneous as the disallowance would establish the deduction had no basis in fact.
3. Because appeal in this case would be taken to the Ninth Circuit, we follow the case law in that circuit. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).
4. We do not understand respondent to contend that petitioner had actual knowledge of the substantial understatement, and the record supports a finding that she lacked such knowledge.↩
5. For the same reasons, petitioner is also relieved of liability for deficiencies in 1986 and 1987, to the extent these deficiencies are attributed to the net operating loss carried over from 1985.↩